DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals a summary judgment issued by the Wood County Court of Common Pleas in favor of a trucking company in a suit for injuries sustained because of the acts of one of the company's employees. For the reasons that follow, we reverse.
 {¶ 2} Appellant, Sean McMahon, was a long-haul trucker. On April 21, 2002, appellant was in the cab of his truck at the Stony Ridge Truck Stop in northern Wood County. As he listened to his CB radio, appellant heard two other truckers, later *Page 2 
identified as Elmer DeForge and James Blake, arguing. As the verbal altercation escalated, appellant later reported, "one gentleman said, well, if you want to fight, you know where I'm at, I'm over here." According to appellant, upon hearing this, DeForge left his truck and came to appellant's vehicle, "* * * and started yelling and screaming at me." At this point, appellant advised DeForge that he'd come to the wrong truck and that the driver he sought was "* * * seven or eight trucks down * * *."
 {¶ 3} Appellant left his truck and accompanied DeForge to the truck occupied by Blake. In his deposition testimony, appellant described what happened next:
 {¶ 4} "* * * So I took him down there, showed him where the guy was. When I walked up to the truck, I put my right foot on the [running board]. And put my hand on handle up here, on the running board, and asked the guy why he's sending this guy to my truck. * * * At that time this other guy that came to my truck [DeForge] jumped up on the running board and started fighting with the guy in the truck [Blake].
 {¶ 5} "Then [Blake] put the truck in gear and I got completely away from the truck. He went forward and I remember him stopping, trying to knock the guy off of his truck. Then I remembered him going forward again and slamming on the brakes. Then he went forward again and [DeForge] fell off the truck and landed on the ground. At that time I could see the trailer was in the path of where he was laying on the ground. I ran up, grabbed the guy, pushed him out of the way as I heard from behind me a truck hood being ripped off by the trailer that was coming to us. And I pushed him out of the way *Page 3 
and tried to get out of the way at the same time and got my leg ran over and he [Blake] fled the scene of the accident."
 {¶ 6} Appellant's leg was severed and a portion of his leg eventually amputated.
 {¶ 7} On May 23, 2003, appellant sued Blake and his employer, appellee Continental Express, Inc. When Blake did not respond to appellant's complaint, appellant obtained a default judgment against him. On February 10, 2005, appellant dismissed appellee from the original suit pursuant to Civ.R. 41(A) and, following hearing, won an award of compensatory and punitive damages against Blake.
 {¶ 8} On February 7, 2006, appellant refiled its action against appellee, seeking damages against Blake's employer for Blake's negligence pursuant to the doctrine of respondeat superior.[1]
Appellee denied liability and moved for summary judgment, asserting that Blake was not acting within the scope of his employment when appellant was injured. In support, appellee submitted the affidavit of its human resources manager who averred that the company did not consider talking rudely on the CB radio or fighting with other truck drivers to be in the furtherance of its interests or in the scope of a driver's employment. Moreover, according to the human resources manager, Blake was "off duty" when the incident occurred as evidenced by pages from his logbook attached to the affidavit. *Page 4 
 {¶ 9} Appellant moved to strike the logbook pages and that portion of the human resources manager's affidavit purporting to ascribe intent to Blake. Appellant argued that appellee could not authenticate the logs and since, according to the human resources manager's deposition testimony, Blake never returned to the company, it could not with any certainty explain how it came into possession of logbook pages. Moreover, appellant insisted that any account of the events relied upon by the human resources manager was hearsay. With its memorandum in opposition, appellant submitted the police report for the incident, showing that Blake was later arrested and charged with driving under the influence of alcohol and leaving the scene of an accident.
 {¶ 10} The trial court granted appellant's motion to strike those portions of the human resources manager's affidavit based on hearsay accounts of the events,[2] but let stand a statement that appellee does not condone or consider fighting with other truck drivers as being within the scope of employment. Based on this, appellant's deposition testimony and the "damages hearing testimony," the court found that Blake was not acting within the scope of his employment. Thus, the court concluded, the doctrine of respondeat superior was inapplicable in this matter and appellee was entitled to summary judgment.
 {¶ 11} From this judgment, appellant appeals, setting forth the following single assignment of error: *Page 5 
 {¶ 12} "The trial court erred to the prejudice of the plaintiff when it granted defendant Continental Express Inc.'s motion for summary judgment."
 {¶ 13} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 14} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984),11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), *Page 6 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248.
 Respondeat Superior {¶ 16} "A master is subject to liability for the torts of his servants committed while in the scope of their employment." Osborne v. Lyles
(1992), 63 Ohio St.3d 326, 329, quoting Restatement of the Law 2d, Agency (1958) 481, Section 219(1).
 {¶ 17} "(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
 {¶ 18} "(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
 {¶ 19} "(a) whether or not the act is one commonly done by such servants;
 {¶ 20} "(b) the time, place and purpose of the act;
 {¶ 21} "(c) the previous relations between the master and the servant;
 {¶ 22} "(d) the extent to which the business of the master is apportioned between different servants;
 {¶ 23} "(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
 {¶ 24} "(f) whether or not the master has reason to expect that such an act will be done;
 {¶ 25} "(g) the similarity in quality of the act done to the act authorized; *Page 7 
 {¶ 26} "(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
 {¶ 27} "(i) the extent of departure from the normal method of accomplishing an authorized result; and
 {¶ 28} "(j) whether or not the act is seriously criminal." Restatement, supra, 506, Section 229. Also quoted at Osborne, supra, 331, fn. 4.
 {¶ 29} Whether an employee is acting within the scope of his employment is ordinarily a question of fact reserved for a jury.Osborne at 330, citing Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271. Only when reasonable minds can come to but one conclusion may the issue be determined as a matter of law. Id.
 {¶ 30} Even were the disputed log book pages proper evidence, they would not be dispositive of whether Blake was within the scope of his employment. Blake, as his employment agreement reveals, was hired by appellee to "* * * operate company controlled vehicles [and to] travel regularly in the service of his/her employer in Arkansas and one or more other states." If we credit the log pages at all, they show that Blake was en route from Atwater, California, to Edison, New Jersey, when the incident occurred. Reasonable minds could certainly conclude that a stop — even an extended one — on a cross-continental delivery for appellee was within the scope of his employment. See, e.g., McNair v. Lend LeaseTrucks, Inc. (1996), 95 F.3d 325, 329. Appellee hired Blake to drive its truck. He was driving its truck when appellant was injured. *Page 8 
 {¶ 31} With respect to appellee's disapproval of its driver's rude speech on the radio or its fighting prohibition, "[t]he fact that the servant's act is expressly forbidden by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but it is usually not conclusive, and does not in itself prevent the act from being within the scope of employment. A master cannot escape liability merely by ordering his servant to act carefully." Keeton, Prosser and Keeton on Torts (5 Ed.1984) 502. Even, "[t]he willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment." Osborne at 330, citing Stranahan Bros.Catering v. Coit (1896), 55 Ohio St. 398, 410.
 {¶ 32} It is only when the employee's act is, "* * * so divergent that its very character severs the relationship of employer and employee,* * *" that it constitutes an abandonment of an employee's responsibility and service to his employer so as to be deemed outside the scope of employment. Osborne, supra, citing Wiebold Studio v. Old WorldRestorations, Inc. (1985), 19 Ohio App.3d 246, 250. The willful and intentional act which would represent a clear departure from an employee's employment and absolve the employer from vicarious liability must be an attack committed by the employee to vent his own spleen or malevolence against the injured person. Id. at 329.
 {¶ 33} The trial court concluded that Blake engaged in such an attack when he attempted to run DeForge down with his trailer. The only problem with this conclusion is that the record, properly considered, is devoid of evidence of Blake's intent to injure *Page 9 
DeForge or anyone else. No affidavit, deposition or other testimony from Blake was introduced into this matter. The sole account of the events underlying the suit comes from the deposition testimony of appellant which is reproduced almost in its entirety in the facts stated above. The most that can reasonably be concluded from that testimony is that Blake and DeForge fought, Blake attempted to get DeForge off his running board, succeeded in doing so, then drove away. There is no testimony or other evidence of record that Blake knew or intended that DeForge or appellant would be imperiled by this act.
 {¶ 34} In its decision and judgment entry, the trial court states that it relied on the evidence presented and the findings resulting from the damages hearing against Blake. The case against Blake, however, was an entirely separate case from the present matter and no part of that case was ever introduced into this proceeding. A court is not permitted to take judicial notice of proceedings in another case, Woodman v.Tubbs (1995), 103 Ohio App.3d 577, 580, even a prior proceeding before the same court involving the same parties. Diversified Mtge. Investors,Inc. v. Athens Cty. Bd. of Revision (1982), 7 Ohio App.3d 157, 159; cf.State ex rel. Coles v. Granville, Slip Opinion No. 2007-Ohio-6057.
 {¶ 35} Moreover, since no part of the earlier proceeding was introduced into the present matter, in our obligation to review this matter de novo we are without any evidence to support an undisputed conclusion that Blake acted intentionally to injure anyone. Consequently, we must conclude that there is a question of material fact as to *Page 10 
whether Blake was acting within the scope of employment when he injured appellant. A question of material fact precludes a summary judgment. Civ.R. 56(C). Accordingly, appellant's sole assignment of error is found well-taken.
 {¶ 36} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed. This matter is remanded to said court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
[1] Appellant added causes of action for negligent hiring, negligent entrustment and vicarious punitive damages for intentional acts. These causes are not part of his appeal.
[2] The court did not expressly rule on the issue of the logbook pages, but presumably the log pages would fall within the hearsay classification absent authentication. *Page 1