[Cite as *Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487.]


STATE OF OHIO        )                IN THE COURT OF APPEALS
                         )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )


WALLACE,

      Appellee,

      v.

WALLACE,

      Appellant.


C.A. No.      25719

Dated: September 7, 2011


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2007-05-1679


### DECISION AND JOURNAL ENTRY

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Tiffany Jackson, Assistant Prosecuting Attorney, for appellee.

Kani Harvey Hightower, for appellant.

WHITMORE, Judge.

**{¶ 1}** Defendant-appellant, LaKumba Wallace ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, calculating his child-support obligation to plaintiff-appellee, Kecia Wallace ("Mother"). This court reverses.

I

**{¶ 2}** Father and Mother married in August 2003 and had a child in March 2006. In May 2007, Mother filed a complaint for divorce on the grounds of incompatibility, and the parties were granted a divorce in August 2007. Under the terms of the original divorce decree, Mother was designated the residential and custodial parent of their child. Father's child-support obligation was calculated in accordance with the child-support worksheet in the amount of $258.68 per month; however; he agreed to pay $400 per month to Mother, an obligation that was reflected in the terms of their decree.

**{¶ 3}** In October 2007, the parties filed an agreed entry in which they consented to handle matters of child support "independently with each other until further notice." The record reveals that from that point forward, the parties shared parenting time approximately 50-50, with each parent caring for the child on alternating weeks. Father continued, however, to pay for the child care expenses of $400 per month while the parties split the parenting time.

**{¶ 4}** On November 5, 2009, Father filed an emergency motion to reinstate visitation, asserting that since Mother sought an ex parte civil-protection order ("CPO") against him in October 2009, she had withheld Father's visitation with their child, despite the child's not being included as a protected party in the ex parte order. At the same time, Father stopped paying Mother the $400 per month that he was paying to cover their monthly child-care expenses. Both

parties assert that they entered into a CPO consent agreement in December 2009, although that agreement is part of a separate case and is not a part of this court's record.

**{¶ 5}** After being contacted by Mother, on January 5, 2010, the Child Support Enforcement Agency ("CSEA") filed a motion to set support in order to establish Father's child-support obligation. On March 23, 2010, Father was served with CSEA's motion, a notice of hearing before the magistrate set for April 20, 2010, and a request for production of documents. Both parties appeared and testified at the hearing, though Mother appeared pro se while Father appeared with counsel he had retained just days before the hearing.

**{¶ 6}** On August 17, 2010, the magistrate issued a decision that was simultaneously adopted by the trial court. Father timely objected to the magistrate's decision, arguing that the findings of fact were not supported by the evidence adduced at the hearing and that the magistrate inappropriately sought and relied upon evidence outside the record for use in calculating his support obligation. The trial court overruled Father's objections, and this appeal followed.

**{¶ 7}** Father asserts six assignments of error for our review, some of which have been rearranged and consolidated for purposes of analysis.

## II

### Assignment of Error Number One

> The trial court erred as a matter of law when the court conducted an independent investigation into other cases concerning father, questioned father about the information, then relied on the information when determining the outcome of the case.

### Assignment of Error Number Two

> The trial court erred as a matter of law by imputing income to father without following the requisite guidelines for imputation of income.

### Assignment of Error Number Four

The trial court erred as a matter of law when the findings of fact in the magistrate's decision contained facts which were not in the record, and the judge's order overruling the objections to the magistrate's decision relied on such facts.

{¶ 8} In his first assignment of error, Father argues that the magistrate violated the Code of Judicial Conduct and committed reversible error by independently investigating the online docket of other cases to obtain Father's financial information for use in calculating his support obligation in this case. In his second assignment of error, Father argues that the trial court erred in imputing income because it did not properly consider the statutory factors necessary to do so. In his fourth assignment of error, Father argues that the magistrate's findings of fact are not supported by the evidence at trial. Specifically, he takes issue with the magistrate's findings that he was unemployed at the time of the hearing; that there was "uncontroverted" evidence that he had never earned less than $30,000 per year; and that he was "charged" with assaulting Mother.

{¶ 9} Generally, this court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, at ¶ 9. "In so doing, [however,] we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, at ¶ 18. The trial court's calculation of child support is reviewed for an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. An abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 10} While the decision to award support is discretionary, an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard. *Chatman v. Chatman*, 9th Dist. No. 24514, 2009-Ohio-4516, at ¶ 5. Thus, this court reviews the record to determine whether there is competent, credible evidence to support the trial court's

factual findings. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, quoting *C.E. Morris Co. v. Foley Constr. Co.*(1978), 54 Ohio St.2d 279, syllabus (in civil cases, " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence' "). If a trial court concludes when addressing child support that a parent is voluntarily unemployed, it can impute income to that parent based on a review of the following factors:

> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;
>
> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
>
> (viii) The age and special needs of the child for whom child support is being calculated under this section;
>
> (ix) The parent's increased earning capacity because of experience;
>
> (x) Any other relevant factor. R.C. 3119.01(C)(11)(a).

See also Ohio Adm.Code 5101:12-60-05.1(E)(1) (requiring CSEA to consider the same criteria when imputing income to a parent when it conducts an administrative review of support).

{¶ 11} At the beginning of the support hearing, Father's counsel sought a continuance of the matter based on the fact that she was newly retained and had received the documents requested by CSEA from Father only the day before the hearing. The trial court denied Father's

request and went forward with testimony from both Father and Mother as to their employment status and current earnings. Neither party, however, introduced any documents, employment-related or otherwise, into evidence.

{¶ 12} When testifying, Father stated that he was currently employed as an independent contractor who delivered packages for an entity named "Prestige" and that he started working there one to two months ago. He stated that he was paid $2.13 per delivery stop and was currently making approximately $500 per month, though his recent paychecks ranged from $93 to $250 a week. Father acknowledged that in his previous position as an independent contractor doing commercial cleaning for System Four, his income was higher, as he testified that his 2009 tax return reflected a self-employed income of $45,000 in that position. He further testified that his income with System Four for 2007 was approximately $87,000 and in 2008 was approximately $102,000, though he testified that his income in that position was "abnormal [compared] to [his] other jobs." No testimony was elicited, however, as to what those "other jobs" were. When CSEA finished questioning Father as to his current income, the following exchange occurred:

> [Court:]  Mr. Wallace, what is the name of your oldest child?
>
> [Father:]  Marquise.
>
> [Court:]  Could you spell that for me [?]
>
> [Father:]  M-a-r-q-u-i-s-e.
>
> [Court:]  And when did he turn 18?
>
> [Father:]  September 21st of last year.
>
> * * *
>
> [Court:]  Wasn't there a recommendation for termination of child support filed last year for this child?
>
> [Father:]  Yes.

[Court:] And at that time you were ordered to pay $606 per month for child support or had that been waived?

[Father:] That had been waived also.

The magistrate continued to question Father as to why he no longer worked for System Four, at which point he explained that the previous franchise of System Four that he worked for "went under" in 2009, and the new owner of the local franchise had been undergoing financial difficulties since taking ownership. He stated that under the new owner, he would get a paycheck, but when he would attempt to cash it, it would not clear because of insufficient funds. Thus, he reached a "mutual agreement" with the new franchise owner that the two parties would "release[] one another" from any further obligations due to his inability to regularly pay Father. He explained that he had received a $10,000 "buyout" from System Four at the end of his relationship with the new owner.

{¶ 13} After further questioning from the magistrate as to Father's current position with Prestige, the magistrate indicated that she was "looking at [his] history here with [his] other children, and it [did not] look like [he had] ever earned less than [$]34,000." Shortly thereafter, Father's counsel objected, and the following exchange occurred:

> [Father's Counsel:] I haven't seen CSEA present any evidence on his prior work history or the amount that he's come – given forth on his cases.
>
> [Court:] I'm just looking it up on his prior history on the court documents that are of record.
>
> [Father's Counsel:] So * * * it's not in the file or anything on this case?
>
> [Court:] It's in a file, yeah.
>
> [Father's Counsel:] In this case?
>
> [Court:] It's part of a record as a matter of fact.

[Father's Counsel:] Okay. I was just raising an objection because I hadn't seen anything or heard anything about his past.

[Court:] Well, I will say that this was a child support order with Mavies Grimes.

[Father:] That was ten years ago, Your Honor.

[Court:] But you're saying that the two children that you had with her are living with you, right?

[Father:] Right.

[Court:] I'm just saying that for purposes of this – this hearing, I'm just surprised that you are only making $500 a month when it looks like the lowest you've ever made was [$]34,000.

[Father:] Well, actually, the lowest I ever made was [$]21,000 * * * when I first started * * * for the county * * *.

Father later testified that he had also worked for the probation department where he earned $28,000 annually, though he did not specify the timeframe in which he held that position or the type of work he performed there. CSEA, however, indicated that it had records of Father's 2006 tax return, which listed his income as $28,795, but CSEA did not indicate the employer or the nature of the work that Father was doing at that time.

{¶ 14} In the findings of fact issued four months after the hearing, the magistrate concluded that "[Father] was unemployed as of the date of the hearing" and further noted that "[i]t is uncontroverted that [Father] has never earned income less than $30,000.00 annually since he joined the work force." While these findings are clearly contrary to the evidence contained in the record, this Court has previously noted that " '[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision.' " *Knouff v. Walsh-Stewart*, 9th Dist. No. 09CA0075, 2010-Ohio-4063, at ¶ 6, quoting *Mealey v. Mealey* (May 8, 1996), 9th Dist. No. 95CA0093, at *2. In overruling Father's objections to the magistrate's decision, however, the trial court similarly concluded in its findings that Father was

"voluntarily unemployed." The trial court further concluded that his income was "usually in the range of $30,000" and therefore imputed income to him at that amount, in light of his "vocational history, education[,] nature of his work" and "the availability of employment in the area as evidenced by his failure to renew his employment contract."

{¶ 15} Initially, we note that there was uncontroverted evidence in the record that Father was employed at the time of the hearing, and the trial court engaged in a lengthy discussion with him in this regard. We further note that despite the findings articulated by the court in support of its decision to impute income to Father, the record reveals that there was little to no information as to Father's "vocational history" discussed at the hearing. Though Father testified that he was currently a delivery driver and had been a commercial cleaner in the past, the evidence was limited solely to the positions and their corresponding income, with no testimony concerning the requisite skills or experience necessary to obtain either position, despite Father's ability to earn only $6,000 to $12,000 per year in one, and over $100,000 in the other. We further note that the record is devoid of any evidence as to Father's education level, licensures, or specialized training, such that the trial court could appropriately impute income to him at a level nearly twice minimum wage. See *Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, at ¶ 10-11 (reversing the trial court's decision to impute income where there was "practically no evidence * * * offered" in relationship to the factors outlined in R.C. 3119.01(C)(11)(a), particularly in terms of Father's vocational abilities).

{¶ 16} To the extent that there was any evidence adduced as to the "nature of [Father's] work," the only testimony developed in this regard pertained to his current position as a delivery driver. That is, there was no testimony as to what work he performed as a commercial cleaner to account for the disparity in income between that position and his current job. Additionally, there

was no testimony as to what other jobs Father might have held in the past, aside from evidence that he was once employed by the county and/or the probation department in an unknown capacity for an unspecified period of time. Finally, though the court considered his "failure to renew his employment contract" with System Four as evidence of the availability of employment in the area, the record simply does not support such a finding, as Father testified that while he continued to work for the franchise once it was under new ownership, it was unable to continue to pay him for his services and consequently terminated the relationship. We again note that there was no documentary evidence admitted throughout the hearing by any of the parties present, nor was there a discussion of any of the statutory factors set forth in R.C. 3119.01(C)(11)(a) beyond what is set forth in this opinion.

{¶ 17} In closing, we note that though it is unclear what, if any, effect the magistrate's decision to sua sponte review matters outside the record relative to Father's earnings might have had on the trial court's review of this matter, we would admonish any magistrate or trial court from doing so, as it is the burden of the parties appearing before the court to introduce evidence for the trier of fact to consider, not the reverse. See *In re J.C.*, 9th Dist. No. 25006, 2010-Ohio-637, at ¶ 13-16 (concluding that it was reversible error for the trial court to sua sponte consider matters outside the record and rely on docket entries from a prior case file in making a custody determination). See also *McMahon v. Continental Express, Inc.*, 6th Dist. No. WD-07-030, 2008-Ohio-76, at ¶ 34 (reversing the trial court's decision to grant summary judgment when the court's decision and judgment entry reflected that it relied on evidence from a different, but related, case between the same parties).

{¶ 18} Upon reviewing the record, we conclude that the trial court abused its discretion in adopting the magistrate's decision and imputing income to Father, because its findings of fact

were not supported by competent, credible evidence. Accordingly, Father's first, second, and fourth assignments of error are sustained, and this matter is remanded to the trial court for further proceedings on this issue.

## Assignment of Error Number Three

The trial court erred as a matter of law by computing and ordering child support without following the requisite child support guidelines.

## Assignment of Error Number Five

The trial court erred as a matter of law when it failed to hold the pro se plaintiff to the same standards as the represented defendant.

## Assignment of Error Number Six

The trial court erred as a matter of law, in calculating child support with insufficient information, after refusing to grant a continuance in order to allow the parties sufficient time to conduct discovery, when neither party provided substantiating evidence of income[.]

{¶ 19} In light of our determination of Father's other assignments of error, his third, fifth, and sixth assignments of error are moot, as the trial court will be required to recalculate his support obligation in light of our decision in this matter. App.R. 12(A)(1)(c).

## III

{¶ 20} Father's first, second, and fourth assignments of error are sustained. Father's third, fifth, and sixth assignments of error are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

———

CARR, P.J., and MOORE, J., concur.