[Cite as *King v. King*, 2012-Ohio-5219.]

STATE OF OHIO            )                 IN THE COURT OF APPEALS
                         )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA         )

DAVID C. KING                             C.A. Nos.    11CA0006-M
                                                       11CA0023-M
    Appellant                                     11CA0069-M

    v.

LAURA J. KING nka CRAIG                    APPEAL FROM JUDGMENT
                                          ENTERED IN THE
    Appellee                              COURT OF COMMON PLEAS
                                          COUNTY OF MEDINA, OHIO
                                          CASE No.     02DR0958

DECISION AND JOURNAL ENTRY

Dated: November 13, 2012

BELFANCE, Judge.

{¶1}     David King appeals the trial court's adoption of the magistrate's decision. For the reasons set forth below, we vacate in part, reverse in part, and affirm in part.

I.

{¶2}     Mr. King and Laura Craig filed for divorce in 2002, and a final decree of divorce was issued in 2004. The decree contained a shared-parenting plan for their two children: C.K., born March 16, 1997, and E.K., born November 1, 1998. In March 2005, Mr. King moved to terminate the shared-parenting plan and to be named the primary residential parent and legal custodian of the children. In that same motion, Mr. King also sought to be reimbursed for medical costs and to terminate child and spousal support. Mr. King subsequently refiled the motion on June 26, 2006.

{¶3}    On August 15, 2006, the magistrate issued an order adopting the recommendation of Dr. Robin Tener, who had evaluated the parties in this case.  The order designated Mr. King as the residential parent during the academic year and Ms. Craig as the residential parent during the summer.  Each parent would control the children's activities during the time he or she was the residential parent.  Recognizing that Mr. King often scheduled the children's activities to conflict with Ms. Craig's companionship time, the magistrate ordered that Ms. Craig be given compensatory companionship time if the activities Mr. King scheduled interfered with the companionship schedule.

{¶4}    On August 25, 2006, Mr. King moved to set aside the magistrate's August 15, 2006 order, arguing that the magistrate should not have appointed Ms. Craig as the residential parent during the summer, that Ms. Craig's parenting time should be supervised, that the magistrate should not have ordered that Ms. Craig receive full custody should Mr. King move out of Ohio, and that the magistrate should not have allowed Ms. Craig compensatory companionship time.  Mr. King also objected to both parties being ordered to seek employment and the fact that his companionship time during the summer would begin at 6 p.m. whereas Ms. Craig's began after school during the school year.

{¶5}    The magistrate subsequently issued a decision on March 29, 2007, which reiterated her August 15, 2006 order.  Mr. King filed a motion to set aside the decision on April 10, 2007, asserting that the shared-parenting plan should have been terminated, that he should be named the residential parent and legal custodian, that the companionship schedule was improper, and that the amount of child support was incorrect.  Mr. King also objected to the magistrate's determination that his spousal support claim was moot because the period for his spousal support obligation had already expired.  On April 12, 2007, Mr. King filed an amended motion to set

aside the March 29, 2007 decision, adding that he should be allowed to pick the summertime activities of the children.

{¶6} Mr. King moved to suspend Ms. Craig's parenting time on June 6, 2007, and subsequently moved on June 25, 2007, and July 20, 2007, to have Ms. Craig found in contempt of the March 29, 2007 magistrate's decision. The magistrate, in a November 16, 2007 decision, declined to find Ms. Craig in contempt. Mr. King subsequently objected to the November 16, 2007 decision.

{¶7} The trial court ruled on Mr. King's motions to set aside[1] the March 29, 2007 decision on January 11, 2008. The trial court sustained his objection regarding the shared-parenting plan and terminated the plan. However, the trial court overruled his objection that he should be the residential parent and legal custodian, instead granting custody to Ms. Craig. The trial court also maintained Mr. King's child support obligation and affirmed the magistrate's determination that the spousal support issue was moot. Mr. King appealed, but this Court dismissed for lack of a final, appealable order.

{¶8} The trial court overruled Mr. King's objections to the magistrate's November 16, 2007 decision on July 3, 2008. The trial court issued an order on July 30, 2008, in which it clarified its January 11, 2008 decision and explained that Mr. King would have companionship every other weekend. Mr. King moved to adjust parenting time on August 22, 2008, and the trial court denied his motion three days later. Mr. King appealed the trial court's July 30, 2008 order, but the appeal was dismissed on the authority of *In re Strickler*, 9th Dist. Nos. 08CA009375, 08CA009393, 2008–Ohio–5813.

---

[1] The trial court treated the motions to set aside as objections to the magistrate's decision.

{¶9} Mr. King filed a motion captioned "Supplemental Memorandum Regarding Objections to Magistrate's Decision of March 29, 2007" on September 3, 2009. In that filing, Mr. King requested that the trial court adopt the August 15, 2006 magistrate's order as an order of the court. On April 7, 2010, Leslie Graske was appointed guardian ad litem upon agreement of counsel for Mr. King and Ms. Craig. On May 26, 2010, Ms. Craig moved for a calculation of spousal-support arrearages and child-support arrearages as well as attorney fees.

{¶10} The trial court held a hearing on all outstanding motions June 8-10, 2010. On December 17, 2010, the trial court found that Mr. King was $14,802.38 in arrears on his spousal support payments, including late fees. The court also found that it was equitable for Ms. Craig to receive attorney fees from Mr. King and that the amount of $4,500 was reasonable. Because the trial court expressly reserved judgment on Mr. King's child-support arrearage as well as to whether Ms. Craig was entitled to attorney fees for the child support, the court determined that there was no just cause for delay.

{¶11} The trial court issued two more judgment entries on January 7, 2011. The first affirmed an order from January 12, 2010, that clarified the companionship schedule for Mr. King while the second, similar to the January 11, 2008 entry, terminated the shared-parenting plan, named Ms. Craig the residential parent and legal custodian, and overruled Mr. King's objection to the child-support obligation. Mr. King filed an appeal on January 14, 2011, from the December 17, 2010 and January 7, 2011 judgment entries.

{¶12} While the appeal was pending, the trial court issued a judgment entry on February 2, 2011, that ruled on all of Mr. King's objections to the March 29, 2007 magistrate decision. Mr. King moved this court to remand the matter to the trial court so that the court could reissue the February 2, 2011 entry. Prior to this Court ruling on Mr. King's motion, the trial court issued

another judgment entry on May 16, 2011, which awarded Ms. Craig a judgment on Mr. King's child-support arrears as well as $3000 in attorney fees. Subsequently, this Court remanded the matter on May 18, 2011, and the trial court reissued the February 2, 2011 entry on June 24, 2011. Mr. King timely appealed the May 16, 2011 and June 24, 2011 entries, and this Court consolidated all three appeals.

{¶13} Mr. King raises four assignments of error for our review.

II.

JURISDICTION

{¶14} Before addressing Mr. King's assignments of error, we must raise an issue regarding this Court's jurisdiction. On January 7, 2011, the trial court overruled Mr. King's objections regarding the amount of his monthly child-support obligation and determined that he must pay $745.46 a month. Mr. King appealed this judgment on January 14, 2011. While this matter was on appeal, the trial court issued a judgment entry on May 16, 2011, awarding Ms. Craig a judgment for $20,511.27 in unpaid child support as well as $3,000 in attorney fees.

{¶15} However, "[o]nce a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. "The trial court [only] retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." *Id*. In this case, the trial court's arrearage judgment relied upon the child-support obligation currently on appeal. Should this Court reverse the amount of Mr. King's child-support obligation, the trial court's arrearage judgment would become incorrect. Accordingly, we conclude that the trial court was without jurisdiction to enter a judgment against Mr. King for his child-support arrearage, and we lack

jurisdiction to consider an appeal from that entry. In addition, in light of the trial court's lack of jurisdiction, the trial court's May 16, 2011 entry is void and must be vacated.

ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DISMISSING UNDER CIV.R. 41 AND BY DENYING APPELLANT-FATHER'S MOTION TO BE NAMED AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILDREN AND TO LIMIT APPELLEE-MOTHER'S PARENTING TIME TO THE STANDARD ORDER OF VISITATION, WHERE THE STATUTORY FACTORS TO BE CONSIDERED IN DETERMINING THE BEST INTEREST OF THE CHILDREN DID NOT SUPPORT THAT REQUESTED ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES UNDER R.C. 3109.04(E)(2)(D) FOLLOWING TERMINATION OF THE SHARED PARENTING PLAN.

{¶16} Mr. King argues in his first assignment of error that the trial court abused its discretion when it designated Ms. Craig as the residential parent and legal custodian of their children.[2] Mr. King does not challenge the trial court's decision to terminate the shared-parenting plan, instead limiting his argument to the allocation of parental rights and responsibilities. We limit our discussion accordingly.

{¶17} Generally, "[w]hen reviewing an appeal from the trial court's ruling on objections to a magistrate's decision, this Court must determine whether the trial court abused its discretion in reaching its decision." *Daniels v. O'Dell*, 9th Dist. No. 24873, 2010–Ohio–1341, ¶ 10. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, ¶ 18.

---

[2] Mr. King also argues that the trial court improperly dismissed his objections to the March 27, 2007 magistrate's decision. However, the trial court did not dismiss Mr. King's objections to the March 27, 2007 decision; rather, it dismissed Mr. King's objections to the August 15, 2006 magistrate's order because his September 3, 2009 motion sought to have the August 15, 2006 order instituted as an order of the court.

**{¶18}** "When making the allocation of the parental rights and responsibilities for the care of the children under this section * * * in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1).

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense

was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1). "[F]or a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion." *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19} In this case, the trial court found that R.C. 3109.04(b)-(d), (h), and (j) were either inapplicable or did not weigh in favor of either party regarding custody of the children. However, it found that Mr. King's "agenda to alienate the children from [Ms. Craig] [wa]s deplorable * * *." *See* R.C. 3109.04(F)(1)(a). The trial court also found that Ms. Craig's health did not affect her ability to parent but found that, although Mr. King had no health issues, his "extreme preoccupation with interfering with the children's relationship with [Ms. Craig] and interfering with her parenting time and authority * * *" to be of concern. *See* R.C. 3109.04(F)(1)(e). The court also found that Ms. Craig was more likely to honor the companionship schedule, *see* R.C. 3109.04(F)(1)(f), that Mr. King had failed to pay child and spousal support, *see* R.C. 3109.04(F)(1)(g), and that he had denied Ms. Craig parenting time under the shared-parenting plan. *See* R.C. 3109.04(F)(1)(i). The trial court found that the R.C. 3109.04(F)(1)(a), (e)-(g), and (i) factors weighed in favor of Ms. Craig being named the residential parent of the children.

{¶20} Mr. King argues that, in determining the parents' wishes regarding the children's care as required by R.C. 3109.04(F)(1)(a), the trial court erred in determining that this factor favored naming Ms. Craig the residential parent because she had never requested to be the residential parent whereas he had. However, the trial court found that Ms. Craig "has greatly improved in her attitude and demeanor and is willing to do what the Court determines is best for her children." It also found that Mr. King

> wants sole custody, sole decision-making authority and termination of or limitation of contact between the children and [Ms. Craig] because he believes she is totally inadequate as a parent and any exposure the children have with her serves to undo all his exemplary parenting. [Mr. King's] agenda to alienate the children from [Ms. Craig] is deplorable and not in the children's best interests.

Mr. King has not disputed the trial court's factual findings, and, given those findings, we cannot conclude that the trial court erred when it determined that this factor favored Ms. Craig.

{¶21} Mr. King further argues that the trial court should have given more weight to R.C. 3109.04(F)(1)(c)-(d) and found that they weighed in favor of him being named the residential parent. However, while Mr. King points to evidence in the record that is favorable to him, the record before the trial court was quite extensive and contained much evidence in Ms. Craig's favor. For example, the children's grades continue to be quite good since they began living with Ms. Craig (e.g. their son was an honor-roll student). *See* R.C. 3109.04(F)(1)(d). Furthermore, the guardian ad litem reported that the children's relationships with both parents were good, and, thus, the trial court could find that R.C. 3109.04(F)(1)(c) did not weigh heavily in favor of either party.

{¶22} Regarding R.C. 3109.04(F)(1)(e), Mr. King argues that Ms. Craig's physical and mental health affected her ability to parent. However, Mr. King relies heavily on incidents that occurred prior to the divorce decree and does not point to any evidence that Ms. Craig's *current*

mental and physical health would make her unable to parent. Furthermore, the trial court noted that, while Mr. King did not have any mental or physical health issues, he did have an "extreme preoccupation with interfering with the children's relationship with [Ms. Craig] and interfering with her parenting time and authority * * *." Mr. King has not challenged the trial court's finding on this matter and, based on the record in this case, the trial court's determination was supported by the record. Accordingly, we cannot say that the trial court erred in determining that R.C. 3109.04(F)(1)(e) weighed in favor of Ms. Craig being named the residential parent.

{¶23} Mr. King argues that, because both parties complained about the other failing to comply with court-ordered companionship time, R.C. 3109.04(F)(1)(f) did not favor either parent. However, the trial court found that Mr. King, throughout the proceedings, sought to limit Ms. Craig's companionship time and repeatedly attempted to unilaterally alter court orders regarding the timing and duration of the parties' parenting time. Given Mr. King's repeated and blatant disregard for court orders, the trial court's determination that Ms. Craig would be more likely to comply with the companionship schedule is supported by the evidence in the record and was not arbitrary or unreasonable.

{¶24} Mr. King acknowledges that he has not paid child support regularly since September 2005, despite being required to pay $730.74 per month plus a 2% servicing charge. *See* R.C. 3109.04(F)(1)(g). Nonetheless, he argues that this should not count against him in the best interest analysis because Ms. Craig has also failed to fulfill her financial duties under the divorce decree. Mr. King points to his claim that Mrs. King failed to reimburse him for $215 in medical expenses for the children. Notably, $215 is less than half of Mr. King's monthly child-support obligation, hardly comparable to Mr. King's refusal to pay child support for years. Thus,

we cannot say the trial court erred when it found that R.C. 3109.04(F)(1)(g) favored Ms. Craig receiving custody.

{¶25} Finally, Mr. King argues that the trial court ignored Dr. Tener's report and her testimony regarding her conclusions about Ms. Craig's parenting abilities. However, Mr. King's reading of Dr. Tener's report is quite selective, focusing solely on her descriptions of Ms. Craig's weaknesses and his strengths while ignoring Dr. Tener's conclusions regarding his own shortcomings (e.g. his controlling personality, his desire to schedule activities during Ms. Craig's parenting time and his belief that "full custody of the children [] represent[ed] his right to do whatever he wishes[]"). Furthermore, in the course of the current proceedings, the guardian ad litem recommended that Ms. Craig be the residential parent, and Mr. King has not made any argument as to why the guardian ad litem's recommendation should not have been considered by the court.

{¶26} As with most parents, Mr. King and Ms. Craig have individual strengths and weaknesses and there was positive and negative evidence concerning both parents as to the relevant best interest factors. Furthermore, the trial court was faced with weighing the best interest factors under circumstances where the parties demonstrated that a shared-parenting plan was unworkable between them. *See Taylor v. Taylor*, 9th Dist. No. 11CA010071, 2012-Ohio-4097, ¶ 13 (recognizing that, in the absence of a shared-parenting plan, the trial court must choose one of the parents to be the residential parent). Accordingly, based on the record in this case, we cannot say the trial court abused its discretion when it determined that Ms. Craig should be the residential parent.

{¶27} Mr. King's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS CALCULATION OF CHILD SUPPORT, SPOUSAL SUPPORT, AND PAYMENT OF FUTURE OUT-OF-POCKET HEALTH INSURANCE COSTS, AND IN CALCULATING CHILD SUPPORT AND SPOUSAL SUPPORT ARREARAGES.

{¶28} Mr. King's second assignment of error raises multiple issues across multiple judgment entries. Mr. King argues that the trial court miscalculated his child-support obligation, his child-support arrearage, and his spousal-support arrearage.

{¶29} We initially note that Mr. King does not develop any argument regarding his spousal support arrearage. *See* App.R. 16(A)(7). *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Furthermore, as discussed above, the trial court lacked jurisdiction to reduce Mr. King's child-support arrearage to a judgment due to Mr. King's pending appeal, and, thus, that judgment must be vacated. Accordingly, we confine ourselves to his arguments concerning his monthly child-support obligation. *See State v. O'Neal*, 9th Dist. No. 26119, 2012-Ohio-3442, ¶ 4.

{¶30} As this is an appeal from a ruling on objections to a magistrate's decision, we review the trial court's decision for an abuse of discretion with reference to the nature of the underlying matter. *Daniels*, 2010–Ohio–1341, at ¶ 10; *Tabatabai*, 2009–Ohio–3139, at ¶ 18. Generally, "[w]e review matters involving child support under the abuse-of[-]discretion standard." (Internal quotations and citations omitted.) *Lawrence v. McCraw*, 9th Dist. No. 10CA0079–M, 2011–Ohio–6334, ¶ 6. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶31} Mr. King argues that the trial court incorrectly overruled his objection that the magistrate improperly completed the child support worksheet when she failed to credit him with

the cost of the children's health insurance. Mr. King is essentially making a manifest weight argument, pointing to his testimony that he had secured health insurance for the children. *See Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.) ("While the decision to award support is discretionary, an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard."). As the Supreme Court recently clarified, when reviewing the manifest weight of the evidence in civil matters,

> [t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 20.

{¶32} The trial court found that Mr. King had presented "no proof of payment of health insurance * * *." It appears the trial court did not believe Mr. King's testimony, which is a matter of credibility. Given that Mr. King had not submitted any proof of insurance and admitted that he had never provided Ms. Craig with a health insurance card, we cannot say the trial court's determination that Mr. King had not demonstrated that he had secured health insurance for the children was against the manifest weight of the evidence. Therefore, it did not err in overruling his objection to the magistrate's decision related to the magistrate's alleged child-support computation error.

{¶33} Mr. King also argues that the trial court erred when it overruled his objection to the magistrate's imputation of $7,124 of income to Ms. Craig. He argues that the trial court should have found Ms. Craig to be voluntarily unemployed or underemployed. However, it was Mr. King's burden to prove that Ms. Craig was voluntarily underemployed, and we cannot

conclude that he met that burden. *See Hoch v. Carr*, 9th Dist. No. 26097, 2012-Ohio-1445, ¶ 2. In this case, Ms. Craig testified that she suffers from congenital lymphedema, a condition where excess water is retained in her legs, resulting in pain and difficulty walking. Her physical condition made standing for long periods difficult, which limited her employment options. She also testified that she had not held a job for any length of time since the spring of 2004, recounting multiple short-term jobs that paid close to minimum wage. The trial court was entitled to believe Ms. Craig's testimony, and Mr. King presented no evidence that Ms. Craig had better employment options available to her. In addition, during the proceedings, Mr. King maintained that, due to Ms. Craig's health problems, she was physically incapable of caring for the children. Given Ms. Craig's employment history, her physical limitations, and the lack of evidence indicating she was not working to her full potential, we cannot say the trial court erred when it overruled Mr. King's objection to the magistrate's decision to impute $7,124 of income to Ms. Craig.

{¶34} Finally, Mr. King argues that the trial court should have deviated from the child-support guidelines because he had the children for the majority of the year. However, Mr. King's argument is based on the August 15, 2006 order naming him the residential parent during the school year. When the trial court ruled on Mr. King's objection, Ms. Craig had been the year-round residential parent for approximately three-years. Mr. King's argument is premised upon facts that are no longer applicable. Furthermore, he has not explained how the facts of this case are extraordinary nor how a deviation of the award would be in the best interests of the children. *See* R.C. 3119.24(A)(1); *Kannan v. Kay*, 9th Dist. No. 26022, 2012-Ohio-2478, ¶ 27. *See also* App.R. 16(A)(7) and *Cardone*, 1998 WL 224934, *8. Under the circumstances, we

cannot say the trial court abused its discretion when it declined to deviate from the standard child-support order.

**{¶35}** Mr. King's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING PLAINTIFF-HUSBAND TO PAY A TOTAL OF $7,500.00 TOWARDS DEFENDANT-WIFE'S ATTORNEYS' FEES.

**{¶36}** In his third assignment of error, Mr. King argues that the trial court erred when it awarded Ms. Craig attorney fees because it did not make a finding that her counsel's hourly rate or his time spent on the matters were reasonable. He also argues that the trial court's award of attorney fees was inequitable because he had not worked for more than two years and was in his mid-sixties.

**{¶37}** R.C. 3105.73(B) provides:

In any post-decree motion or proceeding that arises out of an action for divorce, * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

"[Section] 3105.73 gives the court broad discretion in determining attorney fees. Its award will not be disturbed on appeal absent a showing of a clear abuse of discretion by the court." (Internal citations and quotations omitted.) *Miller v. Miller*, 9th Dist. No. 07CA0061, 2008–Ohio–4297, ¶ 71. As noted above, an abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶38}** The trial court actually made two awards of attorney fees: $4,500 for the work relating to Mr. King's refusal to pay spousal support and $3,000 for work relating to his refusal to pay child support. Despite Mr. King's assertions to the contrary, the trial court expressly did

not consider his retirement assets when determining whether it was equitable that Ms. Craig receive attorney fees for the spousal support litigation. Furthermore, the trial court found the fees to be reasonable. Regarding the trial court's determination of the award being equitable, Mr. King suggests that the court abused its discretion because he has not worked for two years. However, the court explained its reasoning thusly:

> The reality of the parties' situation is that the chronically ill [Ms. Craig] is eking out a sustenance standard of living unable to pay her attorney while the plaintiff chooses not to work, chooses not to seek benefits that generate monthly payments for these two children, and engaged five attorneys to engage in epic litigation.

The court also found that "[t]he evidence is clear that [Mr. King] will not pay spousal support nor comply with the court order to do so." Under the facts of this case, we cannot say the trial court abused its discretion in awarding Ms. Craig $4,500 for attorney fees related to the spousal support litigation.

{¶39} However, because the award of $3,000 was specifically related to the judgment for child-support arrears that we vacated, it is appropriate under these facts that that award be reversed pending the entering of judgment in the child-support litigation. *See Miller*, 2010-Ohio-1251, at ¶ 31.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING APPELLANT-FATHER'S OBJECTIONS AND MOTIONS CONCERNING MAKE-UP/COMPENSATORY VISITATION OR PARENTING TIME WITH THE PARTIES' TWO MINOR CHILDREN.

{¶40} In his fourth assignment of error, Mr. King argues that the trial court should have awarded him compensatory companionship time with his children because he "did not receive summertime parenting time in 2008, 2009 and 2010 to which [he] was entitled and Christmastime break parenting time in late 2009." However, Mr. King does not develop this

argument nor does he explain what companionship time he was denied in the summers of 2008-2010. *See* App.R. 16(A)(7); *see also Cardone*, 1998 WL 224934, \*8. Furthermore, the record contains multiple examples of Mr. King failing to comply with court-ordered companionship time for Ms. Craig. Given Mr. King's undeveloped argument and his repeated noncompliance with the parenting schedules established by the trial court, we cannot conclude the trial court erred when it denied his motions for compensatory parenting time.

{¶41} Mr. King's fourth assignment of error is overruled.

### III.

{¶42} The May 16, 2011 judgment entry is vacated to the extent it reduced Mr. King's child-support arrearage to a judgment, and the award of attorney fees for the child-support litigation is reversed so that the trial court may determine if attorney fees are equitable and reasonable in light of the outcome of any child-support arrearage proceeding. The remaining judgments of the Medina County Court of Common Pleas, Domestic Relations Division, are affirmed, and the matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
vacated in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

PETER T. CAHOON, Attorney at Law, for Appellee.

LESLIE S. GRASKE, Guardian ad litem.