[Cite as *Zaccardelli v. Zaccardelli*, 2013-Ohio-1878.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| RENEE A. ZACCARDELLI | | C.A. No. 26262 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK J. ZACCARDELLI | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 2010-08-2273 |

DECISION AND JOURNAL ENTRY

Dated: May 8, 2013

MOORE, Presiding Judge.

{¶1} Defendant, Mark J. Zaccardelli, appeals the judgment of the Summit County Court of Common Pleas, Division of Domestic Relations. We affirm in part, reverse in part, and remand this matter to the trial court for further proceedings consistent with this opinion.

I.

{¶2} After executing a prenuptial agreement, Mark J. and Renee C. Zaccardelli ("Husband" and "Wife," respectively) were married on July 7, 2000. The parties' prenuptial agreement provided, in part, that Husband's premarital property, including a residence on Carter Road and his interest in his family's business, Blue Line Design, Inc. ("Blue Line"), together with the increase in value to his separate property would remain his property, free of any claim by Wife. After their wedding, the parties resided in the Carter Road residence. During their marriage, Husband worked for Blue Line, and Wife worked as a teacher until the parties' son was born in 2002. When their son was born, Wife terminated her fulltime employment in order

to stay home with their son, and later, to stay home with their daughter, who was born in 2004. During that time, Wife provided tutoring services, worked part-time from the home, and continued her education, obtaining her master's degree in education. In 2007, Husband and Wife executed a deed transferring title of the Carter Road property to their joint ownership with rights of survivorship.

{¶3}    In 2010, Wife filed a complaint for divorce in the trial court. After a hearing, the trial court issued an order finding that the prenuptial agreement was valid and enforceable. However, the court determined that, pursuant to a provision in the agreement, the parties could modify the agreement through a writing signed by both parties. The trial court determined that the 2007 deed effectively modified the prenuptial agreement in regard to the Carter Road property.

{¶4}    The case proceeded to final hearing, and, on December 16, 2011, the trial court issued a decree of divorce. In the decree, the trial court determined that one-half of the "retained earnings" held by Blue Line constituted undisbursed income attributable to Husband as a fifty percent shareholder in the company. The court concluded that Husband's share of Blue Line's retained earnings that had accumulated during the marriage constituted marital property, which was subject to division. The court further determined that the Carter Road property was subject to division between the parties due the 2007 deed. The court reviewed parenting time recommendations submitted by the guardian ad litem and the family court services investigator. The court further reviewed shared parenting plans that the parties had submitted. The trial court adopted Wife's proposed plan in the decree.

**{¶5}** Husband timely filed an appeal from the decree and presents seven assignments of error for our review. We have re-ordered and combined certain assignments of error to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION TO AWARD [WIFE] ONE-HALF[ ]OF THE RETAINED EARNINGS IN BLUE LINE DESIGN, INC., WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S DECISION TO AWARD [WIFE] A ONE-HALF[ ]INTEREST IN THE REAL ESTATE AT 7821 CARTER ROAD, SAGAMORE HILLS, OHIO WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶6}** In his first and third assignments of error, Husband argues that the trial court erred by awarding Wife a portion of the retained earnings held by Blue Line and by awarding Wife a one-half interest in the Carter Road property. Husband maintains that the parties' prenuptial agreement precluded Wife from receiving a share of the retained earnings and the Carter Road property. Further, Husband argues that Wife was not entitled to receive a portion of Blue Line's retained earnings because these funds were the property of Blue Line, and Wife was not entitled to receive an interest in the Carter Road property because Husband owned the home prior to the marriage. We disagree.

"Marital Property" Classification

**{¶7}** A trial court's classification of property as either marital or non-marital is a factual finding. *Jagusch v. Jagusch*, 9th Dist. No. 02CA0036-M, 2003-Ohio-243, ¶ 28, citing *Spinetti v. Spinetti*, 9th Dist. No. 20113, 2001 WL 251348, *4 (Mar. 14, 2001). An appellate court reviews a trial court's factual finding to determine if the finding was against the manifest

weight of the evidence. *See Keefe v. Doornweerd*, 9th Dist. No. 26377, 2013-Ohio-250, ¶ 15.

The Ohio Supreme Court has clarified, when reviewing the manifest weight of the evidence in

civil matters:

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

In addition, here, we must also consider the effect of the prenuptial agreement on the trial court's

classification of property as "marital."

Prenuptial Agreement

{¶8}    The prenuptial agreement provided, in part, that the assets listed on an attached

exhibit, together with any increase in value of those assets, would remain Husband's separate

property. The exhibit included Husband's ownership interest in Blue Line and the Carter Road

property. The agreement further set forth that, except as otherwise provided therein, "all

property acquired after the marriage of the parties shall be divided equally between the parties in

the event the marriage is terminated by divorce[.]" After a hearing on the validity of the

prenuptial agreement, the trial court determined that it was valid and enforceable. However, the

trial court further determined that, pursuant to the terms of the prenuptial agreement, the parties

could modify its provisions through a signed writing.

{¶9}    The parties do not now dispute the validity and enforceability of the prenuptial

agreement. Instead, the parties dispute the application of the terms of the prenuptial agreement

to the facts of this case. Prenuptial agreements are contracts, and the law of contracts generally

applies to their application and interpretation. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 466

(1994). When a court considers the division of property pursuant to an enforceable prenuptial agreement, "a court should not substitute its judgment and amend the contract." *Gross v. Gross*, 11 Ohio St.3d 99, 108-09 (1984).

Retained Earnings

{¶10} In regard to the retained earnings of Blue Line, at trial, Husband testified that he and his brother are each fifty percent shareholders of Blue Line, and that their father, Reno Zaccardelli, oversees the company's accounts. Husband acknowledged that the parties attached an asset statement from Blue Line to the prenuptial agreement that set forth its retained earnings at that time of $47,604. As of the date of the final hearing, the retained earnings of Blue Line had grown to $131,000. The trial court determined that fifty percent of the increase in the retained earnings account was marital property. In challenging this determination, Husband first maintains that the prenuptial agreement precluded Wife from receiving a portion of Blue Line's retained earnings.

{¶11} The prenuptial agreement provided that Wife would not receive any portion of Husband's "ownership" interest in Blue Line. However, the trial court did not award an "ownership" interest in Blue Line to Wife. Pursuant to the terms of the prenuptial agreement, the trial court did not disturb Husband's fifty percent shareholder interest. Rather, it justifiably took it into account in determining the property division in the larger context. Accordingly, we conclude that the court's judgment in this regard "did not contradict the terms of the prenuptial agreement, and therefore was not precluded by the agreement." *See Mulvey v. Mulvey*, 9th Dist. No. 17707, 1996 WL 724759, *2 (Dec. 4, 1996).

{¶12} The prenuptial agreement further set forth that Wife would not be entitled to Blue Line's "current and future assets." However, the trial court determined that one half of the

increase in the retained earnings account was not a Blue Line asset, but was instead a marital asset. Husband argues that the trial court erred in classifying the retained earnings as a marital asset instead of an asset of Blue Line, a separate corporate entity. In support, Husband maintains that he had no unilateral access to Blue Line's retained earnings, and thus the retained earnings did not constitute "income" to Husband pursuant to the analysis set forth in R.C. 3119.01(C)(7) and *Williams v. Williams*, 74 Ohio App.3d 838 (4th Dist.1991). R.C. 3119.01(C)(7) and *Williams* pertain to determination of "income" for child support purposes. This Court has previously examined the issue of retained earnings in a corporation in the context of calculating a parties' gross income for purposes of modification of child support, holding that:

> While it is inequitable to base child support on retained business earnings which provide no disposable income to the parent, it is just as inequitable to permit a parent to reduce his personal income and resulting support obligations by leaving income in a privately held business.

*Absalom v. Absalom,* 9th Dist. No. 15122, 1991 WL 232291, *2 (Nov. 6, 1991); *see also Emary v. Emary*, 9th Dist. No. 96CA006353, 1996 WL 603857, *3-4 (Oct. 23, 1996). We agree with the parties that this analysis is also appropriate for determining whether Blue Line's retained earnings constituted undistributed income for purposes of marital property division. *See* R.C. 3105.171(B) (requiring a trial court to divide marital property equitably between the spouses in a divorce proceeding). Under this analysis, the determinative factor in deciding whether the retained earnings of a corporation constitute income to a party is whether the funds at issue were accessible to the party. *See Williams* at 844-845.

{¶13} During the final hearing, Husband testified that he and his brother decided to retain a certain portion of Blue Line's earnings in a "rainy" day fund in order to cover unexpected business expenses. Husband maintained that he could not unilaterally withdraw these earnings without the consent of his brother. However, Husband acknowledged that Blue

Line had purchased two vehicles for Husband's personal use, paid the parties' property taxes, and paid contributions to the parties' health savings account from the retained earnings. Further, Husband claimed as income on his federal income tax filing the moneys paid by Blue Line for the property taxes and the health savings account.

{¶14} Based upon the evidence presented, we conclude that the trial court's classification of the retained earnings as "marital" property was supported by the weight of evidence that the retained earnings were accessible by Husband and not the property of Blue Line. *See Jagusch*, 2003-Ohio-243, at ¶ 28. Accordingly, Husband's first assignment of error is overruled.

Carter Road Property

{¶15} In regard to the Carter Road property, the parties agree that Husband obtained the property prior to the marriage and that they had agreed in the prenuptial agreement that this property would remain Husband's separate property. In the trial court's order confirming the validity of the prenuptial agreement, the trial court recognized that the parties could modify the terms of the prenuptial agreement in writing. In 2007, Husband and Wife executed a deed transferring title to the marital residence to the parties in joint survivorship. Husband first argues that, because the parties did not reference modification of the prenuptial agreement in the deed, the deed did not constitute a written modification of the prenuptial agreement.

{¶16} The prenuptial agreement provided that it could be modified by written agreement of the parties. The form of modification is not specified in the prenuptial agreement. The trial court determined that the deed acted as written modification of the prenuptial agreement, as it was a writing, signed by both parties, pertaining to the ownership of the Carter Road property.

Based upon the foregoing, we conclude that the trial court did not err in applying the modification provision contained in the prenuptial agreement to the 2007 deed.

{¶17} Husband further argues that, even if the court correctly determined that the parties modified the terms of the prenuptial agreement by the execution of the deed, the Carter Road property was Husband's separate property because he obtained it prior to the marriage.

{¶18} R.C. 3105.171(A)(3)(a) defines "marital property" to include property acquired by a spouse during the course of the marriage. R.C. 3105.171(A)(6)(a) defines "separate property" to include property that a spouse obtained prior to the marriage. Particularly relevant to the dispute at hand, R.C. 3105.171(H) recognizes that "holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property." In certain cases, if property was owned by one spouse prior to the marriage, the court could consider if the property has "transmuted" into marital property. *Louis v. Louis*, 9th Dist. No. 10CA0047, 2011-Ohio-4463, ¶ 6. The term "transmutation" describes "the process by which independent or nonmarital property has changed to marital property or vice versa *by deed or gift* from one party to another." (Emphasis sic.) *Id.*, quoting *Kampf v. Kampf*, 11th Dist. No. 90-A-1503, 1991 WL 70785, *4 (May 3, 1991). In determining whether a deed has transmuted separate property into marital property, this court has considered six factors set forth in *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 246 (12th Dist.1998), as restricted by R.C. 3105.171(A)(6)(b), which pertains to the comingling of assets. As the present issue does not involve the commingling and traceability of assets, R.C. 3105.171(A)(6)(b) is inapplicable. *See Louis* at ¶ 7. Therefore, it is appropriate in this case to apply the six *Kuehn* factors, which include: "(1) the expressed intent of the parties as far as it can be determined; (2) the source of the funds used to acquire the property; (3) the circumstances

which surround the property's acquisition; (4) the beginning and ending dates of the marriage, the acquisition of the property, and the claimed transmutation; (5) the inducement for and/or purpose of the transaction which gave rise to the alleged transmutation; and (6) the value of the property and its significance to the parties." *Louis* at ¶ 7, quoting *Hazen v. Hazen*, 9th Dist. No. 2159, 1993 WL 261566, *1-2 (July 14, 1993). The key concern in determining whether property has transmuted is the intent of the parties. *Louis* at ¶ 9.

{¶19} At trial, the parties testified that, for approximately four to six weeks in 2006, Wife and the children moved from the Carter Road property and lived with Wife's parents. Husband testified that Wife required, as a condition of returning with the children, that he transfer the Carter Road property into their joint ownership. Husband maintained that he executed the deed only because Wife was withholding his access to the children.

{¶20} Wife testified that she did not require Husband to execute the deed as a condition of her returning to the Carter Road residence with the children. On the contrary, Wife indicated that Husband had repeatedly told her that the Carter Road property was "[her] house." Further, the parties testified that, in 2004, Husband began consulting an attorney to prepare a deed to transfer the property into joint survivorship, although he had not previously followed through on transferring the property due to the couple's "rocky" relationship. Husband executed the deed in April of 2007, several months after Wife and the children returned to the Carter Road residence. The trial court determined that, due to the above sequence of events, it found Husband's testimony that he was "coerced" into signing the deed not to be credible.

{¶21} Based upon the evidence presented at trial, we conclude that the trial court's determination in that the Carter Road property was marital was supported by the weight of the evidence. *See Jagusch* at ¶ 28. Accordingly, Husband's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT'S DECISION TO NOT INCLUDE [WIFE]'S MASTER'S DEGREE IN TEACHING AS A MARITAL ASSET, WHICH WAS ACQUIRED DURING THE MARRIAGE AND PAID FOR WITH MARITAL ASSETS, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶22}** In his fourth assignment of error, Husband argues that the trial court erred in failing to classify Wife's master's degree as marital property. We disagree.

**{¶23}** The parties do not dispute that Wife obtained her master's degree during the course of the parties' marriage and that she paid for this schooling with marital funds. Because of this, Husband argues that the master's degree is a "marital asset" having the same value as that which was paid to acquire it. However, the Ohio Supreme Court held in *Stevens v. Stevens*, 23 Ohio St.3d 115 (1986), syllabus:

> A professional degree or license is not marital property and the present value of the projected future earnings of the degreed spouse is not a marital asset subject to division upon divorce. Although not an asset, the future value of a professional degree or license acquired by one of the parties during the marriage is an element to be considered in reaching an equitable award of alimony in accordance with R.C. 3105.18.

**{¶24}** Here, the trial court considered Wife's master's degree in determining that spousal support was not appropriate and reasonable in this case. In regard to Husband's contention that the degree was a "marital asset," he has made no argument that would remove this case from the holding set forth in *Stevens* above. Accordingly, Husband's fourth assignment of error lacks merit and is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT'S DECISION TO VALUE THE REAL ESTATE AT 7821 CARTER ROAD, SAGAMORE HILLS, OHIO AT $330,000.00 WAS ARBITRARY AND AN ABUSE OF DISCRETION.

**{¶25}** In his second assignment of error, Husband argues that the trial court erred in its valuation of the Carter Road property. We disagree.

{¶26} A trial court has discretion in determining the method of valuing a marital asset. *Sergi v. Sergi*, 9th Dist. No. 17476, 1996 WL 425914, *4 (July 31, 1996). Therefore, we will not reverse a trial court's determination of value absent an abuse of discretion. *Id.* The phrase "abuse of discretion" connotes that a trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶27} Here, at the final hearing, each party introduced evidence from their respective real estate appraisers as to the value of the Carter Road property. Wife's expert determined that the value of the residence was $330,000. Husband's expert determined that the value of the residence was $310,000. On cross-examination, Husband's expert testified that, although the difference in the experts' appraisals was somewhat larger than usual, he was not critical of the valuation provided by Wife's expert.

{¶28} Husband has argued that the trial court abused its discretion in not utilizing an average of the two appraisals as the value of the home. However, he has provided no authority that the trial court was required to split the difference. Although there was a discrepancy in the valuations between the parties' experts, we cannot conclude that the trial court abused its discretion in adopting the valuation presented by Wife's expert. *See Blakemore* at 219. Accordingly, Husband's second assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT'S DECISION TO AWARD [WIFE] PRIMARY CUSTODY OF THE CHILDREN WAS, AND NOT ORDER A 50-50 SHARED PARENTING PLAN, AGAINST THE BEST INTERESTS OF THE CHILDREN AND AN ABUSE OF DISCRETION.

{¶29} In his fifth assignment of error, Husband argues that the trial court abused its discretion by adopting the shared parenting plan submitted by Wife instead of ordering a parenting schedule allowing for equal parenting time, as Husband had proposed in his shared

parenting plan, and as was proposed by the guardian ad litem and the family court services investigator.

**{¶30}** A reviewing court will not overturn a trial court's determination of parental rights and responsibilities absent a showing that the trial court abused its discretion. *King v. King*, 9th Dist. Nos. 11CA0006-M, 11CA0023-M, 11CA0069-M, 2012-Ohio-5219, ¶ 18, quoting *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994).

**{¶31}** Here, the trial court had appointed a guardian ad litem, who issued a report and recommendation, wherein she concluded that it would be in the children's best interests to spend equal time in the care of each parent. The guardian submitted a proposed plan where parenting time would be divided equally between the parties. A family services investigator had also submitted a recommendation as to parenting time, in which she agreed that parenting time should be split equally between the parties. Prior to final hearing, the trial court ordered that each party submit a proposed shared parenting plan. Husband's plan reflected an equal division of parenting time. In her plan, Mother proposed that the children reside primarily with her, and that Husband enjoy parenting time on Monday and Tuesday evenings and every other weekend.

**{¶32}** In the decree, the court stated it had considered the factors provided in R.C. 3109.04(F)(1) (setting forth factors a trial court must consider in determining the best interest of a child in allocating parental rights and responsibilities in a divorce proceeding) and R.C. 3109.04(F)(2) (setting forth factors a trial court must consider in determining if shared parenting is in the best interest of the children). In its findings of fact, the trial court noted its particular concern with the testimony of Husband and his father in regard to the parties' son.

**{¶33}** At the final hearing, Wife and her sister testified that the parties' son had become hostile toward Wife, and this hostility had manifested into pushing Wife on a recent occasion

after she had hugged a man, whom she had begun dating, at a birthday party. Wife testified that when she spoke to her son after this incident, he told her that he thought the hug was disrespectful and that "daddy wouldn't do that." During the guardian ad litem's testimony, the guardian acknowledged that she had issued her recommendation prior to becoming aware of the son's recent behavior toward Wife. However, the guardian concluded that this information would not have changed her recommendation as to parenting time. Instead, she concluded that, had she known of son's behavior, she would have stressed in her recommendation that Husband engage in counseling to address certain anxiety issues.

{¶34} During Husband's testimony, he stated that he believes that the children are disapproving of either parent engaging in a romantic relationship with another individual. For example, the parties' son had indicated to Husband that if Husband became involved with another woman or got remarried, he would break Husband's fishing rods. However, Husband denied ever indicating to the children that it would be disrespectful for the parties to engage in romantic relationships with other individuals. He further averred that at no time had he ever spoken negatively about Wife, or about Wife dating other men, in front of the children.

{¶35} Husband's father testified that he believed that Wife was a "sociopath," a "liar," and "a party girl." He believed that Wife had boyfriends because she was flirtatious and dressed provocatively. He further testified that he could "[a]bsolutely not" say one positive thing regarding Wife. However, he denied that he had ever spoken negatively about Wife in front of his grandchildren.

{¶36} The trial court concluded that the testimony and demeanor of Husband and his father established that they had a low opinion of Wife, and the court believed that they had communicated this to the son, causing him to behave aggressively toward Wife. Husband

maintains that no evidence established that he or his father had ever expressed to the children a negative opinion of Wife, and, in their testimony, they specifically denied having done so.

{¶37} As part of the Husband's argument, he challenges the trial court's finding that he and his father spoke negatively about Wife to the parties' son. While a trial court's decision regarding allocation of parental rights will not be overturned absent an abuse of discretion, an appellate court reviews the trial court's factual findings under a manifest-weight-of-the evidence standard. *See Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.) (distinguishing between "abuse of discretion" standard used in awarding support from the "manifest-weight-of-the-evidence" standard used to review factual findings on which the award is based). The trial court found that "Husband and his father, in their testimony and *demeanor*, were quite clear in their low opinion of Wife. Unfortunately, they have communicated this opinion to [their son]." (Emphasis added.). While Husband argues, and the dissent agrees, that the record does not support this finding, it is important to remember that judgments about a witness's credibility are left to the trier of fact. In this case, the trial court felt the need to note for the record that Husband's "demeanor" made it "quite clear" that he had a low opinion of Wife. In other words, Husband communicated his dislike non-verbally.

{¶38} Thus, the trial court could have believed Husband's testimony that he had never said anything disrespectful about Wife to his son but still find that Husband was unable to hide his dislike for her from their son. Alternatively, the trial court could have simply decided that, based on their demeanor, Husband and his father were not credible when they testified that they had never said anything about Wife in front of the parties' son. Based upon the testimony adduced at the final hearing and the trial court's assessment of credibility and demeanor, we cannot say that the trial court "clearly lost its way" in inferring that Husband had communicated,

whether verbally or non-verbally, his clear and palpable dislike of Wife to their son. *See Eastley,* 2012-Ohio-2179, at ¶ 20.

{¶39} In any event, without regard to the trial court's finding that Husband and his father had expressed their negative opinions of Wife to the son, the testimony and demeanor of Husband and his father were relevant factors that the trial court could properly consider in determining the best interests of the children. *See* R.C. 3109.04(F)(1) and (F)(2) (requiring the trial court to consider "all relevant factors" when determining the best interests of the children and ordering shared parenting). The trial court was clearly disturbed by what it viewed as heightened animosity displayed by Husband and his father during the trial, *see, e.g.*, R.C. 3109.04(F)(1)(c) (requiring the court to consider "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest"). Further, although the recommendation of the guardian ad litem was another relevant factor for the trial court to consider, it was not obliged to make its determination in accordance with the guardian's recommendations. Based upon the totality of the evidence before it, we cannot say that the trial court abused its discretion in adopting Wife's shared parenting plan. Accordingly, Husband's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT'S DECISION TO REQUIRE [HUSBAND] TO OBTAIN LIFE INSURANCE TO INSURE HIS CHILD SUPPORT OBLIGATIONS NAMING [WIFE] AS BENEFICIARY, OVER AND ABOVE HIS CHILD SUPPORT OBLIGATIONS, AND NOT REQUIRING [WIFE] TO OBTAIN LIFE INSURANCE TO INSURE HER CHILD SUPPORT OBLIGATIONS, AND WITHOUT ANY EVIDENCE IN THE RECORD ON THIS ISSUE, WAS AN ABUSE OF DISCRETION.

{¶40} In the divorce decree, the trial court ordered Husband to maintain life insurance, naming Wife as an irrevocable beneficiary in an amount sufficient to satisfy his obligations with

respect to the property division and child support for so long as the child support obligation continued. Husband argues that the trial court erred in ordering Husband to obtain life insurance naming Wife as the beneficiary. We agree to the extent that the trial court ordered Husband to name Wife as the beneficiary as to that portion of the life insurance which secured his child support obligation.

{¶41} First, in his brief, Husband maintains that he did not have an existing life insurance policy at the time of the final hearing, and he argues that case law is "unclear" as to whether a trial court can order a party that does not currently carry a life insurance policy to obtain a life insurance policy. However, Husband does not further develop his argument on this point, and he has cited to no authority to support the position that the trial court lacks authority to require him to obtain a new life insurance policy to secure a property division award and child support. *See* App.R. 16(A)(7). Therefore, to the extent that Husband advances this argument in his sixth assignment of error, we decline to address it.

{¶42} Husband next argues that the trial court lacked authority to require him to designate Wife as the irrevocable beneficiary on the life insurance policy. As set forth above, the trial court ordered that Husband secure both the property division and his child support obligation with a life insurance policy designating Wife as the irrevocable beneficiary. In regard to securing the property division, this Court has held that "[i]t is within the trial court's discretion to order that one spouse maintain a life insurance policy *for the other spouse's benefit*." (Emphasis added.) *Karis v. Karis*, 9th Dist. No. 15556, 1992 WL 323888, *5 (Nov. 4, 1992), citing *Conley v. Conley*, 9th Dist. No. 15169, 1991 WL 274511, *3 (Dec. 18, 1991). Here, the trial court ordered that Husband pay to Wife the sum of $195,184.26 in order to achieve equity in the division of the property. Because the policy in part secures an obligation "for the other

spouse's benefit," we cannot say that the trial court abused its discretion in requiring Husband to name Wife as the beneficiary of a policy securing the property division. *See Karis* at *5. Therefore, to the extent that the trial court ordered Husband to maintain a life insurance policy with Wife as the beneficiary to secure this payment, we cannot say that the trial court abused its discretion. *Karis* at *5.

**{¶43}** However, the trial court also ordered that this policy secure the child support obligation. Courts have recognized that "it is common practice for a court to impose an obligation on a parent to maintain life insurance *for the benefit of minor children* until they reach majority following a divorce in order to protect the children's need for support should the parent die before the children reach majority." (Emphasis added.) *Denney v. Denney*, 2d Dist. No. 8667, 1985 WL 7628, *2 (1985); *see also Trickey v. Trickey*, 6th Dist. No. L-09-1307, 2011-Ohio-140, ¶ 17. However, in recognizing this practice, courts have held that it is improper to require an obligor to name the other parent, as opposed to the minor children, as the beneficiary on a life insurance policy securing a child support obligation. *Pruitt v. Pruitt*, 8th Dist. No. 84335, 2005-Ohio-4424, ¶ 36-37; *see also Adams v. Adams*, 6th Dist. No. WD-09-022, 2009-Ohio-6257, ¶ 57.

**{¶44}** Therefore, we conclude that the trial court could properly order Husband to secure the property division payment and his child support obligation with a life insurance policy. To the extent Husband has argued otherwise, his sixth assignment of error is overruled. However, in regard to the beneficiary designation of such a policy, it was improper for the trial court to require Husband to name Wife as the beneficiary to the extent that the policy secured Husband's child support obligation. Therefore, to this extent, Husband's sixth assignment of error is sustained.

## ASSIGNMENT OF ERROR VII

THE TRIAL COURT'S DECISION TO ORDER [HUSBAND] TO PAY TUITION FOR THE CHILDREN'S PRIVATE SCHOOL OVER AND ABOVE HIS CHILD SUPPORT OBLIGATIONS, WITHOUT ANY EVIDENCE AS TO THE COST OF THE TUITION OR HIS ABILITY TO PAY THE TUITION, WAS AN ABUSE OF DISCRETION.

**{¶45}** In his seventh assignment of error, Husband argues that the trial court erred in ordering him to share in the cost of the children's tuition at a private school.

**{¶46}** As set forth above, both parties submitted proposed shared parenting plans to the trial court. Husband's proposed shared parenting plan requested that the children remain in St. Barnabas School through the eighth grade and that each party "be responsible for one-half of the tuition and fees for the children to attend St. Barnabas or any other school the parents agree upon." In Wife's shared parenting plan, which was adopted by the court, it provides that, "[u]nless both parents agree otherwise, in writing, the children shall remain enrolled at St. Barnabas School in Northfield, Ohio through the 8th Grade. The parties will share the cost of tuition and fees in proportion to their incomes as shown on the child support worksheet for school years commencing with 2012-2013."

**{¶47}** Despite his own proposal that the parties' children remain at St. Barnabas through the eighth grade and that the parties equally share the cost of tuition, in his merit brief, Husband argues that "the trial court cannot force him (or any parent for that matter) to send his children to private parochial school and pay private school tuition, without at least hearing evidence on the issue and determining whether the parents can afford it, and then factoring it into the parents' child support obligation." However, Husband has failed to cite any authority or further develop his argument. *See* App.R. 16(A)(7) (appellant's brief shall include an argument "with respect to each assignment of error presented for review and reasons in support of the contentions, with

citations to authorities * * *."). "Appellants have the burden of affirmatively demonstrating error on appeal. Where an appellant fails to cite to any law supporting their assignments of error, it is not this court's duty to create an argument for them." (Internal citation omitted.) *Sherlock v. Myers*, 9th Dist. No. 22071, 2004-Ohio-5178, ¶ 4, citing *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *10 (May 6, 1998). We therefore decline to review the merits of Husband's argument. Accordingly, Husband's seventh assignment of error is overruled.

III.

**{¶48}** Husband's first, second, third, fourth, fifth, and seventh assignments of error are overruled. Husband's sixth assignment of error is overruled in part and sustained in part. The judgment of the Summit County Court of Common Pleas, Division of Domestic Relations, is affirmed in part, reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE<br>
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

**{¶49}** I concur in the majority's analysis and resolution of most of the assignments of error. I dissent with respect to the fifth assignment of error.

**{¶50}** Based on my review of the transcript, I would conclude that the trial court's finding that Husband communicated his low opinion of Wife to their son was not supported by the evidence. First, there was no allegation that Husband communicated any opinions about Wife to the parties' daughter. Relevant to the trial court's findings, moreover, I read no testimony that indicated that Husband conveyed any negative opinions of Wife to their son. Evidence that the child reacted in an aggressive manner towards Wife after seeing her hug another man does not equate to a finding that Husband told the child anything negative about his mother. That evidence might have merely indicated that the child reacted based on his observations as he tried to cope with the disruption of his family.

**{¶51}** Moreover, the trial court did not base its factual finding that Husband conveyed negative opinions about Wife to their son on issues relating to Husband's credibility. It did not

indicate whether it believed Husband's testimony was credible or not. The record is clear that Husband admitted at the hearing that he does not like or respect Wife, and the trial court found as follows: "Husband and his father, in their testimony and demeanor, were quite clear in their low opinion of Wife." When asked whether Husband or his father communicated their dislike for Wife to the child, they both denied it. Nevertheless, the trial court found that "[u]nfortunately, [Husband and his father] have communicated this opinion [of Wife] to [the child]." There is, however, simply no evidence in the record to support that finding. Accordingly, I would conclude that the trial court was unreasonable in its decision to adopt Wife's shared parenting plan on the basis of findings that were not supported by the record.

{¶52} Wife's shared parenting plan effectively left Husband with nothing more than a standard order of visitation instead of companionship with the children commensurate with his status as a joint legal custodian. The resulting shared parenting plan appears punitive and arbitrary. If the court was concerned about the parties' communications to the children about the other parent, it could easily have included a provision like the one in Wife's proposed shared parenting plan, proscribing any actions by either parent that may estrange the children from the other parent or injure the opinion of the children as to either parent. Instead, it deprived Husband of additional parenting time with the children based on the unfounded belief that he had imparted his negative opinions about Wife to their son. I would reverse the trial court's adoption of Wife's shared parenting plan and remand the matter to the trial court for further consideration.

APPEARANCES:

TED CHUPARKOFF and MICHAEL A. CHUPARKOFF, Attorneys at Law, for Appellant.

SUZANNE M. JAMBE, Attorney at Law, for Appellee.